Susan Ritz (SR 1076)
Ritz & Clark LLP
Attorneys for Plaintiff
40 Exchange Place, Suite 2010
New York, New York 10005
212-321-7075

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
YULIANA ESPINAL,

                                Plaintiff

            -against-

LA PRINCESA FASHIONS #2, INC., LA
PRINCESA FASHIONS INC., LA UNICA
MODA INC., LA UNICA RAQUEL INC.,
600 WEST 183rd STREET REALTY
CORP., AVI DISHI, LIOR DISHI and
HENRI BALLAS,

                            Defendants.
-------------------------------------------------------X

08 CV 6283 (WHP)
ECF CASE

COMPLAINT WITH
JURY DEMAND

Plaintiff Yuliana Espinal ("Plaintiff" or "Espinal"), through her attorneys, Ritz & Clark LLP, complaining of defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica Moda Inc., La Unica Raquel Inc., 600 West 183rd Street Realty Corp., Avi Dishi, Lior Dishi and Henri Ballas ("Ballas") (collectively referred to as "Defendants" or "The La Princesa Group" ) alleges:

NATURE OF ACTION

1.      This action is brought to recover money damages for sex, race, color and national origin discrimination and harassment on the basis of sex, race, color and national origin, committed by Defendants:

1

(i)      in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*, as amended by, among others, the Civil Rights Act of 1991 ("Title VII"); and

(ii)      in violation of 42 U.S.C. §1981; and

(iii)      in violation of the New York State Human Rights Law, NY Exec. Law, §290 *et seq.* ("NYS HRL"); and

(iv)      in violation of the New York City Human Rights Law, NYC Admin. Code §8-101 *et seq.* ("NYC HRL").

2.      Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, lost wages and benefits, costs and attorneys' fees and all other appropriate legal and equitable relief.

JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§2000e-5(f) and (g) and 28 U.S.C. §§1331, 1343 (a) (4), 2201 and 2202. Jurisdiction over the state claims and the pendent parties is invoked pursuant to 28 U.S.C. §1367 and the Court's pendent jurisdiction.

4.      Venue is found in the Southern District of New York pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

5.      On or about October 17, 2006, Plaintiff timely filed charges of sex, race, color and national origin discrimination and harassment with the Equal Employment Opportunity Commission ("EEOC") alleging that defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc. and La Unica Moda Inc., discriminated against her by physically

and verbally sexually harassing her and by creating a hostile work environment based on sex, race, color and national origin.

6.      On or about February 21, 2008, the EEOC issued a probable cause finding, as more fully described <u>infra</u>, and began the process of attempting conciliation.

7.      On or about April 9, 2008, the EEOC issued a letter to counsel for Defendants stating, in relevant part, that efforts to conciliate had been unsuccessful and that it had determined that further conciliation efforts would be futile or non-productive.

8.      On or about April 11, 2008, the EEOC mailed the aforementioned letter to Plaintiff's counsel, together with a Notice of Right to Sue (Conciliation Failure).  Both documents were received by Plaintiff's counsel on April 14, 2008.

9.      Plaintiff has fully complied with all the statutory and administrative prerequisites for the filing of this action.


## THE PARTIES

10.     At all times relevant herein, Plaintiff Yuliana Espinal was and is a woman of Dominican national origin and a woman of color.  At the time of the events described <u>infra,</u> she was twenty years old.

11.     Currently, Espinal resides in the State of New York, but is afraid to disclose her whereabouts, because an order of protection against defendant Ballas has been issued in her favor.


THE LA PRINCESA GROUP

12.     On information and belief, and at all times relevant herein, as more fully described <u>infra</u>, the five corporate defendants are interrelated corporations, whose owner

and/or chief executive officer/chairman and/or manager was and is defendant Avi Dishi.

13.    On information and belief, and at all times relevant herein, defendants Lior Dishi and Ballas were and are managers of the corporate defendants, including but not limited to, La Princesa Fashions #2, Inc., La Princesa Fashions Inc., and La Unica Moda.

14.    On information and belief, and at all times relevant herein, as more fully described infra, Defendants are highly integrated with respect to the management and control of their operations including, without limitation, sharing staff, merchandise, management and other aspects of their business, and are sufficiently interrelated to be considered a single employer for the purposes of jurisdiction under Title VII, 42 U.S.C. §1981, the NYS HRL and the NYC HRL.  As such, Defendants comprise an integrated employer and will hereafter be referred to collectively as "The La Princesa Group."

15.    On information and belief, and at all times relevant herein, The La Princesa Group has employed at least 15 employees in each of twenty or more calendar weeks in the current or preceding year.

16.    On information and belief, and at all times relevant herein, defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc. and La Unica Moda Inc. had an identity of interest with defendants La Unica Raquel Inc. and 600 West 183rd Street Realty Corp.

17.    At all times relevant herein, the members of The La Princesa Group were vicariously liable for one another's actions and inactions.

18.    At all times relevant herein, defendants La Princesa Fashions #2, Inc., La Princesa Inc., La Unica Moda Inc., La Unica Raquel Inc., 600 West 183rd Street Realty Corp., Avi Dishi and Lior Dishi were and are vicariously liable for the conduct of their agent and employee, defendant Ballas, as more fully set forth herein.

4

19.    At all times relevant herein, defendants La Princesa Fashions #2, Inc., La Princesa Inc., La Unica Moda Inc., La Unica Raquel Inc., 600 West 183rd Street Realty Corp. and Avi Dishi were and are vicariously liable for the conduct of their agent and employee, defendant Lior Dishi, as more fully set forth herein.

20.    At all times relevant herein, defendants La Princesa Fashions #2, Inc., La Princesa Inc., La Unica Moda Inc., La Unica Raquel Inc. and 600 West 183rd Street Realty Corp. were and are vicariously liable for the conduct of their agent and employee, defendant Avi Dishi, as more fully set forth herein.


THE CLOTHING STORES

21.    On information and belief, and at all times relevant herein, defendant Avi Dishi was and is the sole owner and shareholder of defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica Moda Inc. and La Unica Raquel, Inc., all of which are engaged in the business of selling clothing.

22.    On information and belief, and at all times relevant herein, defendant La Princesa Fashions #2, Inc. was and is a domestic corporation licensed to do business in the State of New York, having its principal place of business at 1455 St. Nicholas Avenue, New York, New York, where it operated and continues to operate a retail clothing store.

23.    On information and belief, and at all times relevant herein, defendant La Princesa Fashions #2, Inc. employed at least 15 employees in each of twenty or more calendar weeks in the current or preceding year.

24.    On information and belief, and at all times relevant herein, defendant La Princesa Fashions Inc. was and is a domestic corporation licensed to do business in the State of New York, which was and is engaged in the business of selling clothing.

25.    On information and belief, and at all times relevant herein, defendant La Princesa Fashions Inc. had its principal place of business at 37-39 Junction Boulevard, Corona, New York, where it operated and continues to operate a retail clothing store.

26.    On information and belief, and at all times relevant herein, defendant La Unica Moda Inc. was and is a domestic corporation licensed to do business in the State of New York, which was and is engaged in the business of selling clothing.

27.    On information and belief, and at all times relevant herein, defendant La Unica Moda Inc. had its principal executive offices at 1365 St. Nicholas Avenue, New York, New York, but operated and continues to operate a retail clothing store located at 150 De-lancey Street, New York, New York.

28.    On information and belief, and at all times relevant herein, defendant La Unica Raquel Inc. was and is a domestic corporation licensed to do business in the State of New York.

29.    On information and belief, and at all times relevant herein, defendant La Unica Raquel Inc. had its principal place of business at 1365 St. Nicholas Avenue, New York, New York.

600 WEST 183rd STREET REALTY CORP.

30.     On information and belief, and at all times relevant herein, defendant 600 West 183rd Street Realty Corp. was and is a domestic corporation licensed to do business in the State of New York.

31.     On information and belief, and at all times relevant herein, defendant 600 West 183rd Street Realty Corp. had its principal place of business at 601 W. 182nd Street, New York, New York.

32.     On information and belief, and at all times relevant herein, defendant 600 West 183rd Street Realty Corp. owned and continues to own the building complex encompassing 1447, 1449, 1451, 1453 and 1455 St. Nicholas Avenue, New York, New York, which includes the location of the retail store operated by La Princesa Fashions #2, Inc.

33.     On information and belief, and at all time relevant herein, defendant Avi Dishi was and is the Chairman and Chief Executive Officer of 600 West 183rd Street Realty Corp.

34.     On information and belief, and at all time relevant herein, defendant Avi Dishi was and is the owner of the building at 601 W. 182nd Street, where defendant 600 West 183rd Street Realty Corp. has its principal place of business.


AVI DISHI

35.     On information and belief, defendant Avi Dishi is a white man who is not of Dominican national origin.

36.     On information and belief, and at all times relevant herein, defendant Avi Dishi was and is the owner and/or principal shareholder of defendants La Princesa Fashions #2,

Inc., La Princesa Fashions Inc., La Unica Moda, Inc. and La Unica Raquel, Inc. all of which are engaged in the business of selling clothing.

37.    On information and belief, and at all times relevant herein, defendant Avi Dishi was and is an employee of The La Princesa Group.

38.    On information and belief, and at all times relevant herein, defendant Avi Dishi had the power to do more than carry out personnel decisions made by others, including without limitation, having the power to hire, fire, discipline and set salaries for and assign work to the employees of The La Princesa Group, including, without limitation, defendants Ballas and Lior Dishi.


LIOR DISHI

39.    On information and belief, defendant Lior Dishi is a white male who is not of Dominican national origin.

40.    On information and belief, defendant Lior Dishi is the son of defendant Avi Dishi.

41.    On information and belief, and at all times relevant herein, defendant Avi Dishi and defendant Lior Dishi resided and continue to reside together at 182-31 Radnor Road, Jamaica, New York 11432.

42.    On information and belief, and at all times relevant herein, defendant Lior Dishi was and is an employee of The La Princesa Group.

43.    On information and belief, and at all times relevant herein, defendant Lior Dishi was and is the general manager of the clothing stores owned and operated by defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc. and La Unica Moda Inc.

44.    On information and belief, and at all times relevant herein, defendant Lior Dishi had the power to do more than carry out personnel decisions made by others, including without limitation, having the power to hire, fire, discipline and set salaries for and assign work to employees of The La Princesa Group, including, without limitation, defendant Ballas.

45.    On information and belief, and at all times relevant herein, defendant Lior Dishi was the direct supervisor of defendant Ballas.


HENRI BALLAS

46.    On information and belief, defendant Ballas was hired by defendant Avi Dishi to serve as the manager of the clothing stores owned and operated by defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc. and La Unica Moda Inc.  On information and belief, and at all times relevant herein, defendant Ballas did serve as manager of these stores.

47.    On information and belief, and at all times relevant herein, defendant Ballas was and is an employee of The La Princesa Group.

48.    On information and belief, and at all times relevant herein, defendant Ballas has resided at 1965 East 7th Street, Brooklyn, New York 11229 and/or 2305 East 13th Street, Brooklyn, New York 11229.

49.    On information and belief, and at all times relevant herein, defendant Ballas had the power to do more than carry out personnel decisions made by others, including without limitation, having the power to hire, fire, discipline and set salaries for and assign work to employees of The La Princesa Group, including, without limitation, Espinal.

FACTS

50.    Espinal legally immigrated to the United States from the Dominican Republic in or about September 2005.

51.    After her arrival in the United States, Espinal was in urgent need of work to support herself and her son.  In or about December 2005, the grandfather of Espinal's son took Espinal to the La Princesa store at 1455 St. Nicholas Avenue, New York, New York and introduced her to defendant Ballas as a potential employee.

52.    On information and belief, in or about December 2005, the grandfather of Espinal's son worked as a superintendent in the building at 1455 St. Nicholas Avenue.

53.    In or about December 2005, defendant Ballas interviewed Espinal for a job as a clothing salesperson at the La Princesa store located at 1455 St. Nicholas Avenue.

54.    Defendant Ballas hired Espinal and assigned her to work at said store commencing on or about December 13, 2005.  On information and belief, Defendant Ballas set Espinal's rate of pay and hours of work.

55.    Espinal was employed by The La Princesa Group from December 12, 2005 until on or about January 10, 2006.

56.    In order to work for The La Princesa Group, Espinal had to relocate her living quarters from Rockland County, New York, to upper Manhattan.

57.    On information and belief, defendant Ballas was aware that Espinal was in desperate need of work to support herself and her son.

58.    At the time of the interview and thereafter, defendant Ballas was, and did hold himself out to be, the manager of the clothing stores that were part of The La Princesa Group.

59.    Espinal spoke virtually no English, so all interactions with defendant Ballas took place in Spanish, which, on information and belief, defendant Ballas speaks fluently.

60.    Almost immediately after Espinal commenced work for The La Princesa Group, Ballas began a course of unwanted, severe and pervasive sexual harassment against Espinal some of the details of which are more fully described infra.

61.    On or about December 16, 2005, defendant Ballas instructed Espinal to accompany him to the basement of the store at 1455 St. Nicholas Avenue.

62.    Upon their arrival, defendant Ballas engaged Espinal in a conversation about her country of origin, her immigration status and her age, and then began touching Espinal's body, including without limitation, running his hands over her breasts.

63.    Espinal struggled with defendant Ballas and tried to get him to stop, including without limitation, pushing his hands away.

64.    Espinal began to cry. With effort, she was able to escape from defendant Ballas and run back upstairs to the store.

65.    Thereafter, and throughout Espinal's employment, defendant Ballas frequently touched Espinal's body, including without limitation, her buttocks, while she worked on the store floor.

66.     On or about January 2, 2006, after dusk, defendant Ballas instructed Espinal, who was engaged in her work, to follow him to another basement storage area adjacent to, but outside and apart from, the store location at 1455 St. Nicholas Avenue.

67.     On information and belief, the adjacent basement storage area in question is located within the complex of buildings owned by defendant 600 West 183rd Street Realty Corp.

68.     On information and belief, The La Princesa Group had granted defendant Ballas access to this adjacent basement storage area.

69.     Once inside this adjacent basement storage area, defendant Ballas sat down and asked Espinal to join him, stating that he wanted to discuss their work.

70.     Fearful of defendant Ballas, but also fearful of losing her job, Espinal complied with defendant Ballas's instructions.

71.     Defendant Ballas then reached out, grabbed Espinal and pulled her down on top of his lap.

72.     Espinal immediately got up from defendant Ballas's lap, became distressed, and asked if they could leave the basement.

73.     Defendant Ballas said, "no," and further stated that he had not given permission for her to leave.

74.     Defendant Ballas then approached Espinal with a bikini bathing suit, and instructed her to put it on.  Espinal replied that she was not a model, nor was she defendant Ballas's girlfriend.

75.     Defendant Ballas then pushed Espinal up against a wall and held her arms back. Defendant Ballas used his free hand to grope Espinal's body, including without limitation, her breasts.  Espinal struggled to free herself.

76.      Defendant Ballas then rubbed Espinal's vagina and stated that he had a room with a bed nearby in that basement.  Espinal continued to struggle.

77.     As defendant Ballas began to pull Espinal by the hand toward the room with the bed, she managed to escape and ran upstairs, crying.

78.     Shortly thereafter, defendant Ballas approached Espinal and told her that no one would believe her if she were to talk about his actions, and threatened that if she did say anything, she would be fired.

79.     On or about January 6, 2006, Espinal went to the basement of 1455 St. Nicholas Avenue to perform her job duties.

80.     Defendant Ballas followed Espinal and told her that if she would kiss him or be his girlfriend, everything that was there in the basement could be hers.  Defendant Ballas then told Espinal that if she didn't like him, she should be with defendant Lior Dishi.

81.     Espinal responded that she was not interested in being anyone's girlfriend, nor was she interested in being given clothing.  She added that she was only interested in her job.

82.     Defendant Ballas told Espinal that it was "nothing" to go out with them.  He then began to molest Espinal, including, without limitation, fondling her breasts.

83.     When Espinal managed to escape from Ballas, he became angry and ordered her to work outdoors in the winter cold and attempt to solicit customers for the clothing store.

84.     During the course of his continuing harassment of Espinal, defendant Ballas told her that he was not going to leave her alone.

85.     The following day, on or about January 7, 2006, defendant Ballas sent Espinal downstairs into the basement at 1455 St. Nicholas Avenue. Espinal remained close to the stairwell in case she needed to escape defendant Ballas.

86      Defendant Ballas followed Espinal downstairs, approached her, and immediately started touching her breasts. Espinal again asked Ballas to leave her alone. She further stated that otherwise she would be forced to act to protect herself. Defendant Ballas again responded that he would not leave Espinal alone.

87.     Espinal began crying. Defendant Ballas responded that she should not cry, because all Dominican girls are whores and sluts and this was nothing.

88.     Espinal managed to escape from the basement and then called the police.

89.     When the police arrived, Espinal was unable to communicate with them, because of the language barrier and her emotional state.

90.     Defendant Ballas told the police that Espinal was crazy, and the police then left without taking action.

91.     Once the police had left, defendant Ballas instructed Espinal to go back inside the store. Instead, Espinal left the store, crying.

92.     On information and belief, immediately after Espinal left the store's premises, defendant Ballas called defendant Lior Dishi at the home he shares with defendant Avi Dishi, and reported that Espinal had called the police, who had come to the store at 1455 St. Nicholas Avenue.

93.    Upon arriving home in tears, Espinal told her son's grandmother that defendant Ballas was assaulting her, and asked her son's grandmother to accompany her to the police precinct.  They went to the 34th precinct, where Espinal filed a criminal complaint against defendant Ballas.

94.    On or about January 8, 2006, defendant Lior Dishi called Espinal at her apartment and asked her to meet with him.  During their meeting, defendant Lior Dishi offered to pay Espinal money to withdraw the criminal complaint and attempted to persuade her not to pursue the criminal matter against defendant Ballas.

95.    On information and belief, defendant Lior Dishi's actions as described in the foregoing paragraph, were taken on behalf of The La Princesa Group.

96.    On information and belief, defendants Lior Dishi and Avi Dishi did not take Espinal's complaints against defendant Ballas seriously.

97.    On information and belief, defendants Lior Dishi and Avi Dishi spoke with defendant Ballas about Espinal's complaints, but decided not to terminate him.

98.    On information and belief, The La Princesa Group permitted defendant Ballas to resume all his managerial functions within a day of his bail having been posted.

99.    At no time did any Defendant offer to continue Espinal's employment in a safe atmosphere, protected from her assailant defendant Ballas.

100.    Defendant Ballas's conduct toward Espinal was so hostile and abusive that no reasonable person could be expected to endure it.

101.    On information and belief, and at all times relevant herein, The La Princesa Group permitted defendant Ballas to manage its clothing stores without any appropriate training or oversight.

102.    Defendants constructively discharged Espinal.

103.    On or about January 19, 2006, the Criminal Court of the City of New York issued the first in a series of temporary orders of protection in favor of Espinal and against defendant Ballas.

104.    To this day, the court has maintained an order of protection for Espinal against defendant Ballas.

105.    On or about July 18, 2006, defendant Ballas was found guilty, by a jury, of two counts of Forcible Touching in violation of New York Penal Law §130.52.  Defendant Ballas was therefore found, beyond a reasonable doubt, to have intentionally, and for no legitimate purpose, forcibly touched the sexual or other intimate parts of Espinal for the purpose of degrading or abusing her, or for the purpose of gratifying defendant Ballas's sexual desire.

106.    At the sentencing on September 25, 2006, the trial judge stated, "The allegations here are serious, as serious almost as one can get for a misdemeanor matter. The conduct of the defendant [Ballas] was persistent, going over a period of about one month with repeated acts, sexual acts, with regard to the complaining witness [Yuliana Espinal], who might be characterized as an extremely vulnerable victim, based on her age and her new arrival in this country with a newborn child."

107.    Defendant Ballas's conviction was affirmed by The Appellate Term, First Department on June 25, 2008.

108.     On information and belief, throughout the entire criminal proceedings, and there-after, The La Princesa Group continued to employ defendant Ballas as their manager and took no action to protect any other employees from him.

109.     On information and belief, at all times relevant herein, at no time did The La Princesa Group maintain any written policy, manual or procedure with respect to em-ployee complaints, including without limitation, sexual harassment complaints.

110.     On information and belief, at no time did The La Princesa Group provide Ballas with any training in his legal obligations under the applicable laws protecting employees from sexual harassment.

111.     The aforementioned conduct was sufficiently severe and/or pervasive to create a hostile and/or abusive work environment for Espinal.

112.     Espinal perceived that the work environment created by the aforementioned con-duct was abusive and hostile.

113.     The aforementioned conduct altered the terms and conditions of Espinal's work environment.

114.     Espinal did not welcome or invite the aforementioned sexual harassment.

115.     Defendants required Espinal to endure severe and/or pervasive sexual harassment in the workplace, making sexual abuse a term and condition of her employment.

116.     By engaging in and facilitating severe and pervasive sexual harassment, Defen-dants unreasonably interfered with the workplace environment and with Espinal's ability to perform the duties of her employment.

117.    The conduct of Defendants, as pleaded above, was and is wanton and reckless and done in such a manner and under such circumstances as to show heedlessness and an utter disregard of the results upon the rights of Espinal that may flow from the aforesaid acts or the manner in which they were done.

118.    The conduct of Defendants, as pleaded above, was malicious and done deliberately with knowledge of Espinal's rights and with intent to interfere with those rights.

119.    The conduct of Defendants, as pleaded above, caused Espinal severe personal physical injury and severe emotional pain and suffering, as well as loss of income and benefits.

120.    On or about February 21, 2008, the EEOC issued a determination holding, *inter alia*, that, "[b]ased on the evidence Charging Party was subjected to sexual harassment and constructively discharged when Respondent failed to take immediate and appropriate action.  The evidence further reveals that although the police were called on or about January 6, 2006, the date of the last incident of sexual harassment, Respondent issued the letter of warning many months later, in September 2006, following the harasser's conviction.  Respondent has acknowledged that it does not have any written policy and procedures in place with respect to employee complaints, including sexual harassment complaints and progressive disciplinary action.  In light of the above, I have determined that there is reasonable cause to believe the Respondents have violated Title VII of the Civil Rights Act of 1964, as amended."

## FIRST CAUSE OF ACTION

121.    Plaintiff repeats and re-alleges each and every allegation contained in this com-
plaint with the same force and effect as if set forth herein.

122.    Defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica
Moda Inc., La Unica Raquel Inc. and 600 West 183rd Street Realty Corp., engaged in
unlawful sex discrimination against and sexual harassment of Espinal in violation of Title
VII of the Civil Rights Act of 1964, as amended by, among others, the Civil Rights Act
of 1991.

## SECOND CAUSE OF ACTION

123.    Plaintiff repeats and re-alleges each and every allegation contained in this com-
plaint with the same force and effect as if set forth herein.

124.    Defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica
Moda Inc., La Unica Raquel Inc. and 600 West 183rd Street Realty Corp. engaged in
unlawful discrimination against and harassment of Espinal on the basis of her race, color
and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended
by, among others, the Civil Rights Act of 1991.

## THIRD CAUSE OF ACTION

125.    Plaintiff repeats and re-alleges each and every allegation contained in this com-
plaint with the same force and effect as if set forth herein.

126.    Defendants engaged in unlawful discrimination against and harassment of Espinal
on the basis of her race, color and national origin in violation of 42 U.S.C. §1981.

## FOURTH CAUSE OF ACTION

127.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

128.    For purposes of the NYS HRL, at all times relevant herein, each and every defendant was an employer of Espinal.

129.    Defendants engaged in unlawful sex discrimination against and sexual harassment of Espinal in violation of the NYS HRL, NY Exec. L. §290 *et seq.* and, more particularly, NY Exec. L. §296.

## FIFTH CAUSE OF ACTION

130.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

131.    Defendants engaged in unlawful discrimination against and harassment of Espinal on the basis of her race, color and national origin in violation of the NYS HRL, NY Exec. L. §290 *et seq.*, and, more particularly, NY Exec. L. §296.

## SIXTH CAUSE OF ACTION

132.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

133.    Defendants Avi Dishi, Lior Dishi and Ballas aided, abetted, incited, compelled and/or coerced the doing of one or more acts forbidden by the NYS HRL, in violation of NY Exec. L. §296(6).

## SEVENTH CAUSE OF ACTION

134.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

135.    For purposes of the NYC HRL, at all times relevant herein, each and every Defendant was an employer of Espinal.

136.    Defendants engaged in unlawful sex discrimination against and sexual harassment of Espinal in violation of the NYC HRL, NYC Admin. Code § 8-101 *et seq.*, and more particularly NYC Admin. Code § 8-107(1).

## EIGHTH CAUSE OF ACTION

137.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

138.    Defendants engaged in unlawful discrimination against and harassment of Espinal on the basis of her race, color and national origin in violation of the NYC HRL, NYC Admin. Code § 8-101 *et seq.*, and more particularly NYC Admin. Code § 8-107.

## NINTH CAUSE OF ACTION

139.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

140.    Defendants aided, abetted, incited, compelled and/or coerced the doing of one or more acts forbidden by the NYC HRL, in violation of NYC Admin Code § 8-107(6).

TENTH CAUSE OF ACTION

141.    Plaintiff repeats and re-alleges each and every allegation contained in this complaint with the same force and effect as if set forth herein.

142.    Defendants are liable for the actions and inactions of each and every one of their agents and employees, including, without limitation, defendants Avi Dishi, Lior Dishi and Ballas, pursuant to the NYC Admin. Code § 8-107(13).

143.    A copy of this complaint will be timely served upon the New York City Commission on Human Rights and the Corporation Counsel.

RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

A.    On the first cause of action, declaring that Defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica Moda Inc., La Unica Raquel Inc. and 600 West 183rd Street Realty Corp., engaged in unlawful sex discrimination against and sexual harassment of Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, by among others, the Civil Rights Act of 1991;

B.    On the second cause of action, declaring that Defendants La Princesa Fashions #2, Inc., La Princesa Fashions Inc., La Unica Moda Inc., La Unica Raquel Inc. and 600 West 183rd Street Realty Corp. engaged in unlawful discrimination against and harassment of Espinal on the basis of her race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, by among others, the Civil Rights Act of 1991;

C.  On the third cause of action, declaring that Defendants engaged in unlawful discrimination against and harassment of  Espinal on the basis of her race, color and national origin in violation of 42 U.S.C. §1981;

D.  On the fourth cause of action, declaring that Defendants engaged in unlawful sex discrimination against and sexual harassment of Espinal in violation of NY Exec. L. 290 et. seq. and, more particularly, NY Exec. L. § 296;

E.  On the fifth cause of action, declaring that Defendants engaged in unlawful discrimination against and harassment of Espinal on the basis of her race, color, and national origin in violation of the NYS HRL §290 *et seq.*, and, more particularly, NY Exec. L. §296;

F.  On the sixth cause of action, declaring that defendants Avi Dishi, Lior Dishi and Ballas aided, abetted, incited, compelled and/or coerced the doing of one or more acts forbidden by the NYS HRL, in violation of NY Exec. L. § 296(6);

G.  On the seventh cause of action, declaring that Defendants engaged in unlawful sex discrimination against and sexual harassment of Espinal in violation of the NYC HRL, NYC Admin. Code § 8-101 *et seq.*, and more particularly NYC Admin. Code § 8-107(1);

H.  On the eighth cause of action, declaring that Defendants engaged in unlawful discrimination against and harassment of Espinal on the basis of her race, color and national origin in violation of the NYC HRL, NYC Admin. Code §8-101 *et seq.*, and more particularly NYC Admin. Code §8-107;

I.   On the ninth cause of action, declaring Defendants aided, abetted, incited, compelled and/or coerced the doing of one or more acts forbidden by the NYC HRL, in violation of NYC Admin Code § 8-107(6);

J.   On the tenth cause of action, declaring that Defendants are liable for the actions and inactions of each and every one of their agents and employees, including, without limitation, defendants Avi Dishi, Lior Dishi and Ballas, pursuant to the NYC Admin. Code § 8-107(13);

K.   Enjoining Defendants from engaging in further acts of unlawful discrimination against and harassment of Plaintiff, and ordering Defendants to prevent future discrimination against and harassment of employees by, among other things, issuing and maintaining appropriate written policies, having appropriate mechanisms for addressing complaints, and providing regular training for all employees and managers to learn about their respective rights and obligations under the applicable laws;

L.   On the first cause of action, compensatory damages for personal, physical injury and past, present and future pain and suffering (collectively referred to as Compensatory Damages") and punitive damages in the maximum amounts permitted by law, together with full compensation for all past, present and future lost wages and benefits;

M.   On the second cause of action, for Compensatory Damages and punitive damages in the maximum amounts permitted by law, together with full compensation for all past, present and future lost wages and benefits;

N.  On the third cause of action, for $10 million in Compensatory Damages and $25 million in punitive damages, together with full compensation for all past, present and future lost wages and benefits;

O.  On the fourth cause of action, for Compensatory Damages in the amount of $10 million and full compensation for all past, present and future lost wages and benefits;

P.  On the fifth cause of action, for $10 million in Compensatory Damages and full compensation for all past, present and future lost wages and benefits;

Q.  On the sixth cause of action, for $10 million in Compensatory Damages and full compensation for all past, present and future lost wages and benefits;

R.  On the seventh cause of action, for $10 million in Compensatory Damages and $25 million in punitive damages, together with full compensation for all past, present and future lost wages and benefits;

S.  On the eighth cause of action, for $10 million in Compensatory Damages and $25 million in punitive damages, together with full compensation for all past, present and future lost wages and benefits;

T.  On the ninth cause of action, for $10 million in Compensatory Damages and $25 million in punitive damages, together with full compensation for all past, present and future lost wages and benefits;

U.  On the tenth cause of action, for $10 million in Compensatory Damages and $25 million in punitive damages, together with full compensation for all past, present and future lost wages and benefits;

V.    On the first, second, third, seventh eighth, ninth and tenth causes of action, for

reasonable attorneys' fees pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §1988, the New York City Human Rights Law and any other

applicable fee shifting statutes;

W. For the costs and disbursements of this action; and

X.  For such other and further relief as this Court deems necessary and proper.


<u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby de-

mands a trial by jury in this action.

Dated:      New York, New York
            July 11, 2008


                                        Yours, etc.,

                                        RITZ & CLARK LLP
                                        Attorneys for Plaintiff Espinal
                                        40 Exchange Place
                                        Suite 2010
                                        New York, NY 10005
                                        212-321-7075


                                        By:  _____/s_____
                                             SUSAN RITZ  (SR-1076)